1  WILLIAM F. ALDERMAN (STATE BAR NO. 47381)
   PEARL DEL ROSARIO (STATE BAR NO. 233449)
2  MOZHGAN SANIEFAR (STATE BAR NO. 233330)
   walderman@orrick.com
3  pdelrosario@orrick.com
   msaniefar@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA  94105-2669
6  Telephone:    415-773-5700
   Facsimile:    415-773-5759
7
   *Attorneys for Plaintiff*
8  *Indarwati Midjan*

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  Indarwati Midjan,                    CASE NO. C 07 1977

13              Plaintiff,               COMPLAINT FOR DAMAGES

14        v.                             JURY TRIAL DEMANDED

15  Carmen Chan and Paul M. Leung,

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

                          COMPLAINT FOR DAMAGES

OHS West:260116273.3

1         Plaintiff Indarwati Midjan ("Plaintiff" or "Indarwati"), by and through her

2 undersigned attorneys, with personal knowledge as to herself and her actions and otherwise on

3 information and belief, hereby alleges as follows:

**I.     INTRODUCTION**

4

5        1.     Human trafficking is a modern-day form of slavery, involving victims who

6 are forced, defrauded, or coerced into sexual or labor exploitation. Trafficking in human beings

7 is reaching epidemic proportions throughout the world, including in the United States. President

8 Bush has called human trafficking a special kind of evil in the abuse and exploitation of the most

9 innocent and vulnerable, and Congress, recognizing the countless human tragedies such practices

10 inflict, passed the Trafficking Victims Protection Reauthorization Act of 2003 (the TVPRA),

11 establishing a private cause of action for victims of human trafficking to ensure both that victims

12 can be made whole and that the perpetrators of this inhuman practice are fully deterred from

13 committing such acts. This action is brought under the TVPRA and other state and federal laws

14 to seek just compensation on behalf of a victim of human trafficking.

15        2.     Indarwati Midjan was one such victim of human trafficking in the United

16 States. Under false promises of fair pay, humane treatment, a simple housekeeping job and

17 continued legal presence in the U.S., Defendants Carmen Chan and Paul Leung lured Indarwati

18 into this country. Immediately upon Indarwati's arrival in the United States and for the next four

19 years, she was put to work in Defendants' home and subjected to long grueling work days for

20 inadequate wages. For the first two years of her employment, Indarwati was made to sleep on a

21 mattress in the garage alongside Defendants' dog. Despite promises to the contrary, Defendants

22 failed to renew Indarwati's immigration visa, causing her visa to expire and rendering her status

23 in the United States illegal, and withheld Indarwati's passport at all times. Using constant threats

24 of arrest, imprisonment by legal authorities, or retribution should Indarwati try to leave,

25 Defendants coerced Indarwati to work under miserable conditions and for substandard pay.

26 Defendants further subjected Indarwati to psychological and emotional abuse by constantly

27 telling her that she was small, stupid and vulnerable to the outside world. Defendants ensured

28 Plaintiff's silence and obedience by keeping her in isolation and a constant state of fear of arrest,

1  imprisonment, or worse. Defendants actively capitalized on Indarwati's illegal immigration

2  status while residing in the U.S. (which Defendants engineered), her inability to communicate

3  with the outside world, and her unfamiliarity with the United States and the laws mandating fair

4  wages and basic human rights.

5         3.     Plaintiff brings this civil action under the Trafficking Victims Protection

6  Reauthorization Act (TVPRA), the California Civil Code, the California Labor Code, the Fair

7  Labor Standards Act (FLSA), state common law, and other provisions of federal and state law.

8  By this complaint, Plaintiff seeks redress for these egregious violations of her basic human and

9  civil rights.

10 **II.    JURISDICTION**

11        4.     Jurisdiction of the subject matter of this action is established under 28

12 U.S.C. Section 1331, the Fair Labor Standards Act, 29 U.S.C. Section 201 *et. seq.* and the

13 Trafficking Victims Protection Reauthorization Act, 18 U.S.C. Section 1589 *et. seq.*

14        5.     This Court has supplemental jurisdiction over the related state law claims

15 asserted herein under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367.

16 Supplemental jurisdiction over those claims is appropriate because they arise from the same

17 common nucleus of operative facts from which the federal claims arise.

18        6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because

19 Defendants reside in this district, and because a substantial part of the events and omissions

20 giving rise to the claims occurred in this District.

21 **III.   PARTIES**

22        7.     Plaintiff Indarwati Midjan is, and at all times relevant was, a citizen of

23 Indonesia who resided in Alameda and San Mateo Counties, California in Defendants' homes for

24 four years. Following her escape from Defendants, and through the present she resides in San

25 Francisco County.

26        8.     Defendant Carmen Chan is a resident of San Mateo County, California.

27 Defendant Chan employed Plaintiff as a domestic worker in the U.S. from on or about July 8,

28

OHS West:260116273.3                          - 2 -

1  2002 until on or about April 7, 2006.  At all times relevant herein Defendant Chan was an

2  employer pursuant to the FLSA and the California Labor Code.

3          9.     Defendant Paul M. Leung is a resident of San Mateo County, California.

4  Defendant Leung employed Plaintiff as a domestic worker in the U.S. from on or about July 8,

5  2002 until on or about April 7, 2006.  At all times relevant herein, Defendant Leung was an

6  employer pursuant to the FLSA and the California Labor Code.

7  **IV.  FACTUAL ALLEGATIONS**

8         10.    Defendants Chan and Leung, both citizens of the United States, are

9  members of Hong Kong's elite business class.  Defendant Chan comes from a prominent business

10  family that owns the Wing Fat Die Casting Company with offices in Hong Kong and a factory in

11  China.  Defendant Leung separately owns a toy company, Nex Products, with offices in the

12  United States and Hong Kong, and a factory in China.  In connection with their respective

13  businesses, Defendants Chan and Leung frequently travel between Hong Kong and the United

14  States.

15         11.    Plaintiff comes from Ponorogo, an impoverished and rural part of

16  Indonesia.  In order to support her family of farmers, Plaintiff moved to Hong Kong to find

17  employment.  Plaintiff is the primary financial provider of her father, mother, and three siblings.

18  Prior to being brought by Defendants into the U.S., in June 2001, Defendants hired Indarwati in

19  Hong Kong through an employment agency to work as a maid for Defendants' family on a two

20  year contract.  Indarwati worked in Hong Kong as a domestic servant for Defendant Chan's

21  parents and took care of Chan's elderly grandmother.

22         12.    After Indarwati had worked for Defendant Chan's parents for some time,

23  Chan began trying to persuade Indarwati to come to the United States to work for her and

24  Defendant Leung as a domestic servant.  Indarwati initially refused, as the United States would be

25  farther from her family in Indonesia and she did not have any friends or family in the United

26  States.  Defendant Chan persisted, promising Indarwati that she would pay her higher wages, that

27  she would only have to work for Chan and Leung instead of Chan's parents and grandmother, and

28  that she would be given one day off every two weeks.  Defendant Chan also said she would

OHS West:260116273.3              - 3 -

1    handle Indarwati's visa requirements and pay for all of Indarwati's travel expenses to the United

2    States.  Relying on these promises, Indarwati eventually agreed to leave Hong Kong to work for

3    Chan and Leung in California.

4           13.    Defendant Chan secured a B-1 domestic employee visa for Indarwati.  In

5    May 2002, Indarwati accompanied Chan to the United States consulate in Hong Kong to obtain

6    the B-1 visa.  As a condition of receiving a visa for a domestic worker, Chan brought a signed

7    contract to the U.S. consulate agreeing to otherwise comply with U.S. labor laws.  Chan also

8    verbally told Indarwati at the United States consulate that she would be paid at least U.S.

9    minimum wages in the U.S.

10          14.    Indarwati traveled to the United States with Defendant Chan and Chan's

11   niece and nephew on or about July 8, 2002.  Throughout their travel and even after their arrival in

12   San Francisco, Chan retained Indarwati's passport and return airplane ticket to Hong Kong and

13   would not return them even at Indarwati's repeated requests.

14          15.    Once in the United States, Defendants dictated that Indarwati follow a

15   strict schedule that regulated all her movements from the crack of dawn until close to midnight,

16   usually seven days a week.  Indarwati was tasked with doing all of the household chores as well

17   as tending to Defendants' other demands.  Indarwati's tasks included cooking three meals a day,

18   cleaning the entire house, walking the dog multiple times a day, hand washing Defendants' cars,

19   doing the household grocery shopping, preparing Defendant Chan's bath, and massaging Chan's

20   hands nightly.  Defendants frequently sent Indarwati to their friends' or relatives' homes for

21   Indarwati to perform similar tasks.  Indarwati was never paid for the work she performed at these

22   other homes.

23          16.    Indarwati was only rarely given time off, and only if Indarwati had

24   completed all of her regular household chores by that morning.  Despite Defendants' promise that

25   Indarwati would be provided one day off every two weeks, Indarwati was never given a full day

26   of rest during her nearly four-year employment with Defendants.

27          17.    Beginning from the date of her arrival in the United States in July 2002

28   through October 2004, Indarwati resided with Defendants in Oakland, California.  Defendants

1   owned and lived in a spacious three-story, four-bedroom home in the affluent Oakland hills area.

2   Defendant Chan's seven-year-old niece and ten-year-old nephew stayed with Chan and Leung for

3   approximately two months until the end of August 2002.  When the children left, Indarwati was

4   forced to live in the garage with Defendants' dog (named "Money") in a small, windowless room

5   Defendants had apportioned for Indarwati.  This space was so small that a regular twin mattress

6   would not fit.  Instead, Defendants had to special order a mattress in order to fit on the floor.  As

7   the garage was not properly ventilated, Indarwati was constantly exposed to exhaust fumes from

8   the cars that were parked in the garage.  The garage space was not suited for human habitation,

9   lacking proper lighting, ventilation, insulation, heat and plumbing.  Indarwati was only allowed a

10   portable heater that was too big to use in the cramped space apportioned to her by Defendants.

11   Indarwati was unable to properly use this heater, despite the damp and cold of the garage, due to

12   her concern that the heater would catch fire as it emitted too much heat given the size of the

13   room.  However, when it would get too cold in the garage, Indarwati had no choice but to turn on

14   the heater.  When Indarwati finished her daily chores, Defendants ordered Indarwati to return to

15   and remain in this windowless space.  As there were no bathrooms readily accessible to Indarwati

16   from her place in the garage, she was forced to reenter the main house in order to use the

17   bathroom – and even then she was only permitted to use a bathroom located on the top floor of

18   the three-story house.

19          18.    Over the course of Indarwati's nearly four years living with and working

20   for Defendants, Defendants subjected her to severe psychological coercion and abuse.  Although

21   it was Defendants who allowed Indarwati's lawful immigration status to expire, Defendants

22   repeatedly told Indarwati that she was an illegal immigrant and threatened that the police would

23   arrest her if she told anyone about her employment situation.  Based on communications with the

24   Defendants, Indarwati believed that Defendants themselves would report her to the police or

25   immigration officials if she ever attempted to leave.  Defendants instructed Indarwati not to speak

26   with anyone outside Defendants' home, threatening that Indarwati was also in danger of being

27   abducted or kidnapped and sold to a brothel.  As a consequence of Defendants' repeated threats

28   and psychological intimidation, Indarwati believed that she would be in serious danger were she

1 │ to ever disobey Defendants' instructions.

2 │         19.     Defendants frequently became angry with Indarwati, intimidating and

3 │ humiliating her. Defendants emotionally abused Indarwati by telling her that she was stupid,

4 │ small, and feeble-minded like a child. Defendants saw to it that Indarwati had no family, friends,

5 │ or community that Indarwati could turn to throughout the four years of her employment.

6 │ Indarwati's isolation and dependency on Defendants as her sole source of security, survival and

7 │ human contact made her particularly vulnerable to their psychological abuse. Defendants meant

8 │ for their actions and behavior to intimidate and frighten Indarwati into submission. In order to

9 │ further intimidate Indarwati and keep her from telling anyone about her employment situation or

10 │ from leaving, Defendant Chan told Indarwati how she and Defendant Leung had one of their

11 │ business partners beaten up in China because they were angry at him for leaving their company.

12 │ Indarwati feared that if Defendants could do this to one of their business partners, they could do

13 │ far worse to her as she was only a maid in their household. Defendant Chan also told Indarwati

14 │ about a massage therapist whom Chan tracked down and recovered money from after the person

15 │ had left town without informing Chan. These stories frightened Indarwati and made her believe

16 │ that Defendants were capable of finding her and causing her physical harm if she left. Indarwati

17 │ suffered nightmares as a result of Defendants' intimidation. Indarwati was unable to see a doctor

18 │ or a dentist at any time in her nearly four years of employment with Defendants.

19 │         20.     Defendants refused to let Indarwati use the telephone except to make

20 │ infrequent and periodic calls to her family in Asia with phone cards that Indarwati purchased

21 │ herself. Defendants did not allow Indarwati to drive; nor did Defendants ever drive her anywhere

22 │ except to locations where Indarwati would be forced to work. Defendants, in fact, made

23 │ Indarwati walk long distances or take the bus to the store to purchase Defendants' groceries.

24 │ When Indarwati asked Defendants if they could find a mosque that Indarwati could attend and

25 │ exercise her religious rights, Defendants ignored her request.

26 │         21.     Although Defendants had told Indarwati that Defendants would renew

27 │ Indarwati's B-1 immigration visa on her behalf, Defendants failed to do so. Defendants also

28 │ refused to give Indarwati her passport and her return plane ticket to Hong Kong despite her

1   repeated requests.

2         22.    From July 2002 to October 2004, Indarwati worked as a domestic servant

3   in Defendants' Oakland hills home.  At all times relevant hereto,  Indarwati worked on average

4   from about 6:30 a.m. to about 10:00 p.m. without sufficient rest breaks in between, usually seven

5   days per week, and was paid only $600 per month.  Even after Indarwati finished her chores by

6   10:00 p.m., she still had to be on-call in case Defendants wanted her to do a task or to fetch

7   something.  During the first two months of her employment in the Oakland hills home, Indarwati

8   was forced to work around the clock in order to take care of Defendant Chan's niece and nephew

9   who were visiting from Hong Kong.  Not only did Indarwati have to help feed, clothe and bathe

10  the children during the day (along with her other daily tasks), she also had to watch the children

11  throughout the night (particularly because Chan's nephew was a sleepwalker).  Consequently,

12  Indarwati was not afforded a restful night sleep during this time.

13        23.    After approximately one year of working for Defendants, Indarwati asked

14  Defendants for her passport and told Defendants that she wanted to leave.  Defendants refused to

15  return Indarwati's immigration documents or to allow Indarwati to return to Hong Kong.

16        24.    In or around November 2004, Indarwati packed Defendants' belongings

17  and accompanied Defendants to their new home in South San Francisco, California, and resided

18  there while Defendants' new home in Hillsborough was being constructed.  In South San

19  Francisco, Indarwati continued to work for Defendants, performing the same tasks and following

20  the same rigorous work schedule that she had done in Defendants' Oakland home. During the

21  time Indarwati worked at Defendants' South San Francisco residence, Indarwati was paid $700

22  per month.  Defendants continued to intimidate, threaten and abuse Indarwati to keep her from

23  speaking with others or from trying to escape.

24        25.    In or around January 2006, Indarwati packed Defendants' belongings and

25  accompanied Defendants to their new home in Hillsborough, California.  At the Hillsborough

26  house, Indarwati provided the same grueling household services as she had provided in

27  Defendants' previous two homes, this time for $800 per month.  Throughout her entire period of

28  employment, Defendants paid Indarwati her wages in cash on an every-other-month basis.

1  Defendants' new gated home in Hillsborough was significantly larger than Defendants' two prior

2  homes, with 4 bedrooms and 4 bathrooms, all of which Indarwati was required to clean every day.

3  At this new residence equipped with surveillance cameras, Defendants continued to inflict

4  psychological and emotional abuse on Indarwati, intimidating and frightening her and keeping her

5  in fear of police action and other physical harm.

6        26.  On April 7, 2006, Indarwati escaped from Defendants' home, without her

7  possessions, passport, or her last month's wages. Indarwati now brings this action to recover for

8  full compensation for her labors, damages she sustained as a result of Defendants' fraud, abuse,

9  and knowing disregard of federal and California laws, along with any other relief the Court sees

10  as just and proper.

11        27.  Any statute of limitations relating to the causes of action in this complaint

12  on behalf of Plaintiff has been suspended for the period of Plaintiff's false imprisonment and for a

13  reasonable time period following her release.  Plaintiff was unaware of her rights and unable to

14  seek appropriate remedies, including the filing of a lawsuit during such time period.

15  **V.  CLAIMS FOR RELIEF**

16  **FIRST CLAIM FOR RELIEF**

17  (Trafficking Victims Protection Reauthorization Act, Forced Labor,<br>18 U.S.C. §§ 1589, 1595)

18  (Against All Defendants)

19        28.  Plaintiff hereby refers to and incorporates each and every allegation set

20  forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

21        29.  The forced labor provision of the Trafficking Victims Protection

22  Reauthorization Act (TVPRA), 18 U.S.C. Section 1589, establishes:  Whoever knowingly

23  provides or obtains the labor or services of a person (1) by threats of serious harm to, or physical

24  restraint against, that person or another person; (2) by means of any scheme, plan, or pattern

25  intended to cause the person to believe that, if the person did not perform such labor or services,

26  that person or another person would suffer serious harm or physical restraint; or (3) by means of

27  the abuse or threatened abuse of law or the legal process, shall be fined or imprisoned not more

28  than 20 years, or both.

OHS West:260116273.3

- 8 -

30.    Defendants knowingly obtained Plaintiff's services by threatening her with serious harm, including threatening to report her to the police, causing her to fear that she would be arrested or detained, as Defendants had confiscated and kept Plaintiff's passport and did not provide her with a return plane ticket to Indonesia.

31.    Defendants knowingly obtained Plaintiff's services by their scheme, plan or pattern intended to cause Plaintiff to believe that, if she did not perform the labor or services Defendants requested, she would suffer serious harm or physical restraint.

32.    Defendants knowingly obtained Plaintiff's services by means of abuse or threatened abuse of the law or the legal process.

33.    Defendants used threats and intimidation to hold Plaintiff in captivity and force her to work without paying her the compensation required by law.

34.    As a result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined at trial.

35.    Pursuant to 18 U.S.C. Section 1595(a), which provides for recovery of civil damages for violations of Section 1589, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendants' wrongful conduct.

**SECOND CLAIM FOR RELIEF**
(Trafficking Victims Protection Reauthorization Act
Trafficking Into Servitude, 18 U.S.C.§§ 1590, 1595)

(Against All Defendants)

36.    Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

37.    The trafficking into servitude provision of the TVPRA, 18 U.S.C. Section 1590, provides:  recruiting, harboring, transporting, providing, or obtaining by any means any person for labor or services in violation of laws prohibiting peonage, slavery, involuntary servitude, or forced labor shall subject defendant to fines.

38.    As set forth herein, Defendants knowingly recruited, harbored, transported, provided, and obtained Plaintiff to provide labor and services to the Defendants in violation of laws prohibiting forced labor.

OHS West:260116273.3

- 9 -

39.     As a result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined at trial.

40.     Pursuant to 18 U.S.C. Section 1595(a), which provides for recovery of civil damages for violations of Section 1590, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendants' wrongful conduct.

**THIRD CLAIM FOR RELIEF**
(Violation of the California Civil Code/Civil action
for damages to victims of human trafficking)

(Against All Defendants)

41.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

42.     The civil damages provision for victims of human trafficking pursuant to California Civil Code, Section 52.5, provides: a victim of human trafficking as defined in Section 236.1 of the Penal Code may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief.

43.     California Penal Code Section 236.1(a) establishes that any person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking.  Penal Code Section 236.1(d) defines unlawful deprivation or violation of the personal liberty of another as the substantial and sustained restriction of another's liberty accomplished through fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out.  Under the same section, duress is defined as knowingly destroying, concealing, removing, confiscating, or possessing any actual or purported passport or immigration documents of the victim.  "Forced labor or services," according to Section 236.1(e), means labor or services that are performed or provided by a person and are obtained or maintained through force, fraud or coercion, or equivalent conduct that would reasonably overbear the will of the person.

44.     As set forth herein, Defendants knowingly restricted the personal liberty of Plaintiff through fraud, deceit, coercion, duress, menace and threat of unlawful injury to Plaintiff, causing Plaintiff to reasonably believe it likely that Defendants would carry out their threats. Defendants brought Plaintiff into their employ by using fraud, repeatedly threatened her with arrest or some other injury, and knowingly destroyed, concealed, removed, confiscated or possessed Plaintiff's passport, in order to keep Plaintiff from leaving Defendants' employment. Defendants' fraud and psychological and emotional coercion were conduct that would and did reasonably overbear the will of Plaintiff.

45.     As a result of Defendants' conduct, Plaintiff is a victim of human trafficking as defined in Section 236.1 of the Penal Code.  Plaintiff has suffered damages and, pursuant to California Civil Code Section 52.5, is entitled to recover damages and reasonable attorneys' fees for Defendants' wrongful conduct.

**FOURTH CLAIM FOR RELIEF**

(Violations of the Fair Labor Standards Act)

(Against All Defendants)

46.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

47.     The FLSA, 29 U.S.C. Section 206(f), provides that an employee employed in domestic service in a household shall be paid the minimum wage as required by law.  At all relevant times, Plaintiff was employed in domestic services in one or more households and was so employed for more than 8 hours a day.  Domestic service employees who live in the household where they are employed are entitled under the FLSA to be paid the minimum wage for all hours worked pursuant to 29 C.F.R. Section 552.102.

48.     Plaintiff provided services on a daily basis for both of the Defendants, so that at all relevant times each of the Defendants was a single employer or joint employer of Plaintiff within the meaning of the FLSA, 29 U.S.C. Section 203(d).  Defendants never paid Plaintiff the minimum wage for the services that she provided to them.

49.     Plaintiff, a non-exempt employee, performed work for each of the

1 | individual Defendants at all times alleged herein.

2 |           50.     Defendants knowingly and willfully required, suffered or permitted

3 | Plaintiff to work hours well beyond a normal work day, including working well over 8 hours a

4 | day, seven days a week, and knowingly and willfully failed and refused to pay Plaintiff the

5 | minimum wage for hours worked as required under federal law.

6 |           51.     At times, Defendants required Plaintiff to be on call 24 hours a day without

7 | any rest breaks or uninterrupted sleeping time.  During some nights, Defendants required Plaintiff

8 | to provide child care services throughout the night, denying Plaintiff a reasonable night's sleep.

9 |           52.     Defendants have specific employment record-keeping obligations under the

10 | FLSA, 29 U.S.C. Section 211(c), including making, keeping, and preserving records of their

11 | employees and of the wages, hours, and other conditions and practices of employment maintained

12 | by Defendants.  Defendants are obligated to accurately record the actual number of hours that

13 | each employee works.  Plaintiff is informed and believes and on that basis alleges that Defendants

14 | have failed to keep adequate employment records and have not properly or adequately recorded

15 | Plaintiff's hours worked during her employment.

16 |           53.     Defendants knew, should have known, or showed reckless disregard for the

17 | FLSA's provisions applicable to Plaintiff and willfully, intentionally, and without good faith

18 | violated these laws.  As a result of Defendants' willful violations, Plaintiff is entitled to receive

19 | liquidated damages in an additional amount above the wages already due her.

20 |           54.     Under the FLSA, 29 U.S.C. Section 216(b), Plaintiff is entitled to recover

21 | all unpaid wages, an additional equal amount as liquidated damages, and reasonable attorneys'

22 | fees and costs in amounts to be proven at trial.

23 |                   **FIFTH CLAIM FOR RELIEF**

         (Violations of the California Labor Code/Failure to Pay

24 |                Minimum Wages and Overtime)

25 |              (Against All Defendants)

26 |           55.     Plaintiff realleges and incorporates by reference the allegations contained

27 | in paragraphs 1 through 27 above as if fully set forth herein.

28 |           56.     Labor Code § 1197 establishes the right of employees to be paid minimum

1     wages for their work, in amounts set by state law. Labor Code §§ 1194(a) and 1194.2(a) provide

2     that an employee who has not been paid the legal minimum wage as required by Section 1197

3     may recover the unpaid balance together with attorneys' fees and costs of suit, as well as

4     liquidated damages in an amount equal to the wages unpaid and interest thereon.

5            57.     Labor Code § 1198 and 8 California Code of Regulations Section 11150, §

6     3 provide that domestic service "live-in" employees in California shall not be employed more

7     than nine hours in any workday for the first five workdays in any week unless they receive

8     additional compensation beyond their regular wages in amounts specified by law. The employee

9     is entitled to overtime pay at a rate of one and one half times the regular rate for all hours worked

10     in excess of nine hours during the first five workdays. For the first nine hours worked on the

11     sixth and seventh days of the workweek, the employee is entitled to be paid overtime pay of one

12     and one half times the regular rate. For the remaining hours worked on the sixth and seventh

13     days, the employee is entitled to be paid at double the regular rate. Labor Code §§ 1194(a) and

14     1194.2(a) provide that an employee who has not been paid overtime compensation as required by

15     Section 1198 may recover the unpaid balance of the full amount of such wages, together with

16     attorneys' fees and costs of suit.

17            58.     8 California Code of Regulations Section 11150 requires employers to

18     permit their employees to take paid breaks and unpaid lunch periods as specified therein, and

19     specifies penalties, in addition to unpaid wages, to be paid by employers who violate these

20     provisions.

21            59.     8 California Code of Regulations Section 11150 provides that every

22     employer shall keep accurate employment records, including accurate time records showing when

23     the employee begins and ends each work period, meal periods, and the total number of hours

24     worked each day. The employer is also required to provide an employee with an itemized

25     statement in writing showing: (1) all deductions, (2) the dates for which the employee is being

26     paid, (3) the employee's name and (4) the employer's name.

27            60.     Defendants knowingly and willfully required, suffered or permitted

28     Plaintiff to work in violation of these standards, and knowingly and willfully failed and refused to

1    pay Plaintiff overtime wages for overtime hours worked as required under California law.

2            61.    Defendants knowingly and willfully failed and refused to pay Plaintiff the

3    minimum wage required under California law for the hours worked and services provided for

4    Defendants by Plaintiff.

5            62.    Defendants knowingly and willfully failed and refused to provide Plaintiff

6    with rest breaks and meal periods as required by California law.

7            63.    Plaintiff is informed and believes and on that basis alleges that Defendants

8    have failed to keep adequate employment records and have not properly or adequately recorded

9    Plaintiff's hours worked during her employment.

10           64.    Plaintiff is entitled to recover all unpaid minimum and overtime wages to

11   which she is entitled, plus interest and attorneys' fees and costs incurred in bringing this civil

12   action. Plaintiff is also entitled to liquidated damages in an amount equal to the minimum wages

13   unlawfully not paid to her by Defendants and interest thereon. As a direct and proximate result of

14   Defendants' unlawful failure and refusal to pay Plaintiff wages as required by California law, and

15   other violations of the law as set forth herein, Plaintiff has suffered damages in an amount to be

16   proven at trial.

17   **SIXTH CLAIM FOR RELIEF**

18   (Violation of California Labor Code Sections 203 and 204)

19   (Against All Defendants)

20           65.    Plaintiff hereby refers to and incorporates each and every allegation set

21   forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

22           66.    Section 203 of the California Labor Code provides that if an employer

23   willfully fails to pay any wages of an employee who is discharged or who quits, the wages of the

24   employee shall continue as a penalty from the date of the termination of employment for 30 days.

25   Section 204 requires that all wages earned by any employee are due and must be paid twice

26   during the calendar month on days designated in advance by the employer as the regular paydays.

27           67.    At the time Plaintiff escaped Defendants' confinement, Defendants owed

28   her wages and overtime premiums, as alleged herein.

COMPLAINT FOR DAMAGES

68.     At all times alleged herein, Defendants failed to pay Plaintiff twice monthly as required by law.

69.     Defendants have willfully failed to pay Plaintiff the wages and overtime premiums she is due, entitling her to recover waiting time penalties equal to thirty days' pay, pursuant to Labor Code § 203.

70.     As a direct and proximate result of Defendants' willful failure to pay earned wages and overtime amounts to Idarwati as required by California law, and other violations of the law as set forth herein, Idarwati has suffered damages in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
(Violation of California Labor Code Sections 551 and 552 and 8 California Code of Regulations Section 11150 / Rights To Days of Rest)

(Against All Defendants)

71.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

72.     California Labor Code Section 551 requires that every person employed in any occupation of labor is entitled to one day's rest in every seven days.  California Labor Code Section 552 requires that no employer shall cause his employees to work more than six days in seven.  8 California Code of Regulations Section 11150 requires that in each calendar month, an employee shall receive the equivalent of one day's rest in every seven days.

73.     During Plaintiff's employment with Defendants, Defendants never provided Plaintiff with a full single day of rest, in violation of California Labor Code Section 551 and 552 and 8 California Code of Regulations Section 11150.

74.     Plaintiff is entitled to recover penalties pursuant to California Labor Code Section 558.

75.     As a direct and proximate result of Defendants' unlawful failure and refusal to provide Plaintiff days of rest as required by California law, and other violations of the law as set forth herein, Plaintiff has suffered damages in an amount to be proven at trial.

///

**EIGHTH CLAIM FOR RELIEF**

(Violation of California Labor Code Section 970)

(Against All Defendants)

76.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

77.     California Labor Code Section 970 prohibits either directly or indirectly influencing, persuading, or engaging any person to change from any place outside of California to any place within the state of California for employment by means of knowingly false representations, whether spoken, written, or advertised in printed form. Section 972 of the California Labor Code provides that any person who violates Section 970 is subject to criminal and civil penalties, including double damages resulting from such misrepresentations.

78.     In or about May 2002, Defendants knowingly made false representations to Plaintiff about the circumstances and the lawfulness of her emigration to the United States, including, but not limited to, falsely informing Plaintiff that she would be properly paid in accordance with the laws of the United States, and that she would have a simple and undemanding job working in Defendants' household for an average of 40 hours per week.

79.     Defendants had knowledge of the falsity of their misrepresentations at the time those misrepresentations were made and/or had no reasonable grounds for believing their representations to be true.

80.     Defendants intended for Plaintiff to rely on their false statements and misrepresentations to induce Plaintiff to travel to California.

81.     Plaintiff justifiably relied on Defendants' misrepresentations in deciding to leave her home and life in Hong Kong and emigrate to the United States.

82.     As a result of Defendants' misrepresentations, Plaintiff was injured in an amount to be proven at trial and is entitled to all appropriate penalties under the California Labor Code, including, but not limited to, double damages.

///

///

**NINTH CLAIM FOR RELIEF**

(Intentional Fraud)

(Against All Defendants)

83.    Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

84.    Defendants knowingly made false representations to Plaintiff in or about May 2002 about the circumstances and the lawfulness of her entry into the United States, including, but not limited to, falsely informing Plaintiff that she would be properly paid in accordance with the laws of the United States and that she would have reasonable working conditions in Defendants' house.

85.    Defendants had knowledge of the falsity of their misrepresentations at the time those misrepresentations were made.  The truth was that Defendants never intended to comply with U.S. and California labor laws or to pay Plaintiff properly and provide reasonable working conditions.

86.    Defendants made the representations with the intent to defraud and induce Plaintiff to come to the United States.  Defendants intended for Plaintiff to rely on their false statements and misrepresentations.  Plaintiff justifiably relied on Defendants' misrepresentations in deciding to leave her life in Hong Kong and emigrate to the United States.

87.    Defendants made these false representations to Plaintiff in order to induce her to leave her home and life in Hong Kong and move to the United States where she would be employed by Defendants without being paid the minimum wages and overtime premiums required by law.

88.    Plaintiff was injured as a result of her justifiable reliance on Defendants' false statements and misrepresentations, which caused her to leave her home, subjected her to exploitation of her labor, and caused her to suffer damages.  Plaintiff is entitled to damages in an amount to be proven at trial.

89.    Defendants committed the acts alleged in this Complaint with the wrongful intention of injuring Plaintiff.  Defendants' improper motive amounted to malice, in conscious

1    disregard of Plaintiff's rights.  Because Defendants acted with full knowledge of the

2    consequences to the Plaintiff as alleged in this Complaint, with the intent to violate the statutory

3    and other employment rights of Plaintiff, and/or with a willful, conscious, wanton, malicious and

4    oppressive disregard for Plaintiff's rights and for the deleterious consequences and cruel and

5    unjust hardship resulting to Plaintiff, Plaintiff is entitled to exemplary and punitive damages in an

6    amount to be proven at trial.

7                    **TENTH CLAIM FOR RELIEF**
                               (Concealment)
8
                          (Against All Defendants)
9

10             90.     Plaintiff hereby refers to and incorporates each and every allegation set

11   forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

12             91.     Defendants concealed from Plaintiff material facts related to her

13   employment and living arrangements while in the United States, including, but not limited to,

14   providing wages far less than the minimum wage required under United States law, requiring an

15   excessive and grueling work schedule, providing insufficient days off for rest, offering inadequate

16   room and board, and restricting Plaintiff's movements while in the United States.

17             92.     Defendants entered into an employment contract with Plaintiff and as

18   Plaintiff's employers were under a duty to inform her of material facts related to her employment.

19   Defendants intentionally concealed these material facts because they intended to defraud the

20   Plaintiff into entering into the employment relationship.

21             93.     Plaintiff was unaware of the concealed facts.  Had Plaintiff known of the

22   concealed facts, she would not have entered into the employment relationship with Defendants.

23             94.     Plaintiff was injured as a result of the concealment, which caused her to

24   leave her home, subjected her to exploitation of her labor, and caused her to suffer physical and

25   emotional damages.  Plaintiff is entitled to damages in an amount to be proven at trial.

26   ///

27   ///

28   ///

## ELEVENTH CLAIM FOR RELIEF
(False Promise)

(Against All Defendants)

95.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

96.     While in Hong Kong, Defendants falsely promised Plaintiff that she would be provided proper wages, a suitable working environment, and comfortable living accommodations.  At the time that the promise was made, Defendants had no intention of performing it.

97.     Defendants made this promise with the intent to fraudulently induce Plaintiff to come to the United States and enter into an employment contract, while never intending to provide what was promised.

98.     Plaintiff was injured as a result of her justifiable reliance on Defendants' false promise, which caused her to leave her home, subjected her to exploitation of her labor, and caused her to suffer physical and emotional damages.  Plaintiff is entitled to damages in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF
(Negligent Misrepresentation)

(Against All Defendants)

99.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

100.     Defendants made false representations to Plaintiff in or about May 2002 about the circumstances and the lawfulness of her emigration to the United States, including, but not limited to, falsely informing Plaintiff that she would be properly paid in accordance with the laws of the United States and that she would have a simple and undemanding job working in Defendants' household.

101.     Defendants had no reasonable grounds for believing their representations to be true.

COMPLAINT FOR DAMAGES

102.    Defendants intended for Plaintiff to rely on her false statements and misrepresentations.  Plaintiff justifiably relied on Defendants' misrepresentations in deciding to leave her home and life in Hong Kong and emigrate to the United States.

103.    Plaintiff was unaware of Defendants' true intentions, and had she been aware of such facts, would not have left her home to come to the United States with Defendants.

104.    Plaintiff was injured as a result of her reliance on Defendants' false statements and misrepresentations, which caused her to leave her home, subjected her to exploitation of her labor, and caused her to suffer damages.  Plaintiff is entitled to damages in an amount to be proven at trial.

### THIRTEENTH CLAIM FOR RELIEF
(False Imprisonment)

(Against All Defendants)

105.    Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

106.    Defendants violated Plaintiff's personal liberty by acting in a manner that had the purpose and effect of confining Plaintiff against her will and limiting Plaintiff's contact with the outside world.  Defendants accomplished this restraint through the use of fraud and the negligent and intentional use of psychological force, and express and implied threats of physical, psychological and economic force against Plaintiff.

107.    Defendants had no privilege, permission, or consent to restrain, confine and detain Plaintiff for appreciable periods of time as set forth herein.

108.    As a proximate result of said conduct, Plaintiff has suffered extreme mental distress, humiliation and anguish, and other emotional and physical injuries, as well as economic losses, all to her damage in amounts to be proven at trial.  Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff.  Defendants' improper and evil motive amounted to malice, and was done in conscious disregard of Plaintiff's rights.  Plaintiff thus is entitled to recover punitive damages from Defendants in an amount to be proven at trial.

OHS West:260116273.3

- 20 -

**FOURTEENTH CLAIM FOR RELIEF**
(Breach of Contract)

(Against All Defendants)

109.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

110.     Defendants and Plaintiff agreed, both orally and via the written contract alleged in paragraph 13 above, that Plaintiff would be fairly compensated at the U.S. minimum wage rate for the services she performed for Defendants in the United States and that she would have reasonable working conditions of no more than 40 hours per week.

111.     Plaintiff has duly performed each and every condition, covenant, and promise and obligation required on her part in accordance with the terms and conditions of this contract.

112.     Defendants breached their contract with Plaintiff by not making the payments required under the contract.

113.     As a result of Defendants' breach of contract, Plaintiff has suffered damages in an amount to be determined at trial.

**FIFTEENTH CLAIM FOR RELIEF**
(Breach of the Covenant of Good Faith and Fair Dealing)

(Against All Defendants)

114.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

115.     The contract between Plaintiff and Defendants contained, by implication of law, a covenant of good faith and fair dealing.  Defendants covenanted that they would not do anything in the performance or enforcement of the contract to impair or frustrate the right of Plaintiff to receive the benefits she had been promised.

116.     By willfully failing to perform under this contract, failing to pay Plaintiff the minimum wages and overtime premiums required by law, and subjecting Plaintiff to unlawful working conditions, Defendants breached the implied covenant of good faith and fair dealing.

1    117.    As a result of the Defendants' breach of the implied covenant of good faith

2    and fair dealing, Plaintiff has been wrongfully denied the benefits of her contract and has

3    sustained damages in an amount to be proven at trial.

4                          **SIXTEENTH CLAIM FOR RELIEF**
                          (Intentional Infliction of Emotional Distress)
5
                              (Against All Defendants)
6

7    118.    Plaintiff hereby refers to and incorporates each and every allegation set

8    forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

9    119.    Defendants engaged in outrageous conduct toward Plaintiff, with the

10   intention to cause or with reckless disregard of causing Plaintiff to suffer severe emotional

11   distress.  As a proximate and actual result of said conduct, Plaintiff has suffered and continues to

12   suffer extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well

13   as economic losses, in an amount to be proven at trial.

14   120.    Defendants committed the acts alleged herein maliciously, fraudulently and

15   oppressively with the wrongful intention of injuring Plaintiff, with an improper and evil motive

16   amounting to malice and in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover

17   punitive damages in an amount to be proven at trial.

18                        **SEVENTEENTH CLAIM FOR RELIEF**
                          (Negligent Infliction of Emotional Distress)
19
                              (Against All Defendants)
20

21   121.    Plaintiff hereby refers to and incorporates each and every allegation set

22   forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

23   122.    By Defendants' status as Plaintiff's employers, and by virtue of

24   Defendants' role in bringing Plaintiff from Hong Kong to the United States unlawfully and with

25   knowledge of Plaintiff's vulnerability and dependence on Defendants as alleged herein, each of

26   the Defendants owed Plaintiff a duty of care and a fiduciary duty to act in Plaintiff's best

27   interests.

28   123.    Defendants knew or reasonably should have known that the conduct

1  described herein would and did proximately result in physical and emotional distress to Plaintiff.

2  124.   At all relevant times, Defendants had the power, ability, authority, and duty

3  to stop engaging in the conduct described herein.

4  125.   Despite said knowledge, power, and duty, Defendants negligently failed to

5  act so as to stop engaging in the conduct described herein.

6  126.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

7  has suffered and continues to suffer serious emotional distress, humiliation, anguish, emotional

8  and physical injuries, as well as economic losses, all to her damage in an amount to be proven at

9  trial.

10  **EIGHTEENTH CLAIM FOR RELIEF**
(Conversion)

11

(Against All Defendants)

12

13  127.   Plaintiff hereby refers to and incorporates each and every allegation set

14  forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

15  128.   Plaintiff owned a passport that Defendants took from her immediately after

16  landing at the San Francisco International Airport and converted her property to their use.

17  Defendants have knowingly and wrongfully refused, and continue to refuse, to return Plaintiff's

18  property to her.

19  129.   As a result of Defendants' wrongful acts and omissions, Plaintiff has been

20  injured and damaged and demands restitution and damages, in an amount to be determined at

21  trial.

22  130.   Defendants committed the acts alleged in this Complaint with the wrongful

23  intention of injuring Plaintiff with an improper motive amounting to malice, in conscious

24  disregard of Plaintiff's rights. Because Defendants' actions were willful, wanton, malicious and

25  oppressive, Plaintiff is also entitled to an award of punitive damages.

26  ///

27  ///

28  ///

## NINETEENTH CLAIM FOR RELIEF
(Negligence)

(Against All Defendants)

131.    Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

132.    By Defendants' status as employers, by virtue of Defendants' role in bringing Plaintiff from Hong Kong to the United States and with knowledge of Plaintiff's vulnerability and dependence on Defendants as alleged herein, and by cutting Plaintiff off from other sources of aid and support, both Defendants owed Plaintiff a duty of care and a fiduciary duty to act in Plaintiff's best interests.

133.    Defendants reasonably should have known of their obligations owed to Plaintiff, given their duties of care and fiduciary duties to Plaintiff.

134.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered on-the-job injuries as alleged in this complaint, including but not limited to severe back pain.

135.    By engaging in the acts alleged in this Complaint, Defendants failed to exercise reasonable care to protect Plaintiff from harm, and thereby breached their duty of care to her and caused her to suffer damages in an amount to be proven at trial.

## VI.   JURY TRIAL DEMAND

136.    Plaintiff hereby demands a jury trial on all issues so triable.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment or issue an order against Defendants, and each of them, as follows:

1.    General, compensatory and special damages in an amount to be proven at trial;

2.    Unpaid wages, including minimum wages and overtime premiums, in an amount to be proven at trial;

3.    Statutory penalties and liquidated damages in an amount to be proven at

1    trial;

2            4.      Punitive and exemplary damages in an amount to be proven at trial;

3            5.      Liquidated damages pursuant to Labor Code § 1194.2(a);

4            6.      Double damages pursuant to Labor Code § 970;

5            7.      Pre- and post-judgment interest;

6            8.      Reasonable attorneys' fees and costs; and

7            9.      Such other and further relief as the Court deems just and proper.

8

9    Dated: April 6, 2007                      WILLIAM F. ALDERMAN
                                               PEARL DEL ROSARIO
10                                             MOZHGAN SANIEFAR
                                               ORRICK, HERRINGTON & SUTCLIFFE LLP

11

12                                             William F. Alderman

13                                             _____
                                               William F. Alderman
                                               Attorneys for Plaintiff
14                                             Indarwati Midjan

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OHS West:260116273.3

- 25 -

COMPLAINT FOR DAMAGES